IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YASIN EL SAMMAK and OLGA ELSAMAK, on behalf of her minor son A.E., <br><br> Plaintiffs, <br><br> v. <br><br> ARAB REPUBLIC OF EGYPT, <br><br> Defendant. | Case No. _____ |

## COMPLAINT

Plaintiffs Yasin El Sammak and Olga Elsamak, on behalf of her minor son A.E., bring this suit against Defendant Arab Republic of Egypt ("Egypt") and state as follows:

## PRELIMINARY STATEMENT

1. In broad daylight in midtown Manhattan, Egypt, through its agents, brazenly and viciously attacked a young man, Yasin, and his teenage brother, A.E. This case seeks to hold Egypt accountable for the reprehensible acts of violence its agents committed on American soil.

2. Yasin and A.E. are U.S. citizens and New York residents. Yasin is a 22-year-old nursing student; A.E. is a 16-year-old high school junior.

3. On the afternoon of August 20, 2025, Yasin and A.E. went to the Egyptian Mission to the United Nations ("the Mission") in New York City to express their disapproval of the closure of the Rafah border crossing between Egypt and Gaza, which, among other things, blocked humanitarian aid from reaching Gaza. At the Mission, a friend of the brothers attempted to place a thin metal chain on the doors of the Mission building in symbolic protest of the border closing. Both Yasin and A.E. watched from a public sidewalk, separated from the Mission by multiple barricades.

4.Egyptian security agents burst through the Mission's doors before the friend could finish placing the chain through the door handles. The friend dropped the chain and ran away. The agents chased after the friend, but were unable to catch him—so they turned their ire on Yasin and A.E., who still stood on the sidewalk behind the barricades.

5.One agent moved around the barricades that separated the brothers from the Mission and hit Yasin with the dropped chain. Another agent grabbed the then-15-year-old A.E. from the same area and pulled him toward the Mission, holding him in a doorway and preventing the terrified A.E. from escaping. Then, a group of agents dragged Yasin and A.E. into the Mission. Once inside—and likely believing they were beyond the reach of the law—the agents whipped Yasin repeatedly with the chain and choked him with a scarf he wore until he could not breathe and believed he would die. Agents forcibly held A.E. during this time.

6.The beating stopped only because New York City police officers arrived. However, the Egyptian agents lied to the officers, telling them that Yasin and A.E. had attacked *them* with a chain, which led the officers to arrest the brothers—the *victims* of Egypt's violence.

7.As a result of Egypt's violent conduct, which violated New York law in many respects, Yasin and A.E. suffered physical and emotional injuries.

**PARTIES**

8.Plaintiff Yasin El Sammak is a citizen of the United States and a New York resident. He is 22 years old. He currently attends nursing school.

9.Plaintiff Olga Elsamak is a citizen of the United States and a New York resident. She is the mother of Yasin El Sammak and A.E.

2

10. A.E. is a citizen of the United States and a New York resident. He is 16 years old and a high school junior. At the time of the events at issue in this case, he was 15. As a minor child, he is being represented in these proceedings by his mother, Olga Elsamak.

11. Defendant Egypt is a foreign state. At all times relevant herein, Egypt acted through and was responsible for the tortious acts or omissions of its officials or employees acting within the scope of their office or employment, including the officials and employees who oversaw, directed, or participated in brutally attacking Plaintiffs on August 20, 2025.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1330 and 28 U.S.C. § 1605(a) as money damages are sought from a foreign state for personal injury occurring in the United States and caused by the tortious act or omission of that foreign state and of officials or employees of that foreign state acting within the scope of their office or employment; and 28 U.S.C. § 1367.[1]

13. This Court has personal jurisdiction over Defendant pursuant to 28 U.S.C. § 1330(b) and C.P.L.R. § 302(2).

14. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)(2), (f)(1) and (f)(4) as a substantial part of the events giving rise to this action occurred in this District.

---

[1] Under the Foreign Sovereign Immunities Act, a foreign state is subject to the jurisdiction of United States courts where, as here, plaintiffs seek money damages for personal injury occurring in the United States and caused by the tortious acts of that foreign state or of its officials or employees acting within the scope of their office or employment. 28 U.S.C. §1605(a)(5). The tortious conduct alleged in this Complaint occurred in the United States, including at and around Egypt's diplomatic mission in New York City, which is physically located within the territorial boundaries of the United States. The alleged conduct does not constitute the exercise or performance of a discretionary function within the meaning of 28 U.S.C. §1605(a)(5)(A). *See, e.g.*, *Usoyan v. Republic of Turkey*, 6 F.4th 31 (D.C. Cir. 2021) (holding Republic of Turkey was not immune from tort claims brought by protestors who alleged they were violently physically attacked by Turkish security agents in Washington D.C.)

## FACTUAL ALLEGATIONS

**<u>Protests Erupt Worldwide to Demand Egypt Open its Border Crossing with Gaza</u>**

15. In May 2024, Egypt's Rafah border crossing with Gaza closed after Israel seized control of the Palestinian side, preventing humanitarian aid from reaching Gazans. Throughout the summer of 2025, protesters around the world asked Egypt to reopen its side of the Rafah border crossing so that humanitarian aid might reach Gaza. These protests took place in cities from Los Angeles[2] to London[3] to Israel[4] to the Hague[5] to New York,[6] typically at Egyptian embassies and consulates.

**<u>Egypt's Attack on Plaintiffs at the Mission</u>**

16. On August 20, 2025, a friend of Yasin ("Friend-1") invited Yasin to protest outside the Mission, located in midtown Manhattan at 304 East 44th Street, New York, NY 10017, between First and Second Avenues.

17. Yasin agreed to accompany Friend-1. Yasin's younger brother, A.E., agreed to come as well. Yasin and A.E. took the subway from their home to midtown Manhattan, where they met Friend-1. At some point before the three arrived at the Mission, Friend-1 said he

---

[2] https://beverlypress.com/2025/08/pro-palestinian-protesters-swarm-the-grove.

[3] https://www.cbsnews.com/news/uk-cairo-embassy-closed-egypt-removes-barriers-gaza-war-protests-diplomacy.

[4] https://www.haaretz.com/israel-news/2025-08-01/ty-article/.premium/palestinian-protest-against-gaza-starvation-at-israels-egyptian-embassy-stirs-controversy/00000198-61cc-de6e-a198-e9ed05a30000.

[5] https://www.arabnews.com/node/2609107/middle-east.

[6] https://www.nytimes.com/2025/08/31/nyregion/nypd-egyptian-mission-brothers-arrested.html.

planned to place an inexpensive chain he had brought onto the Mission's doors as a symbolic protest.

18. Friend-1, Yasin, and A.E. arrived at the Mission around 4:30 p.m.  The Mission is a brick building with two glass doors, each of which has a gold-colored handle.  Two sets of barricades were set up outside the Mission on each side of the public sidewalk, as shown in the photograph below.  The public sidewalk, however, was open to pedestrian traffic.



19. At some point soon after the three arrived at the Mission, Friend-1 approached the Mission's doors.



20. Yasin and A.E. stood on the sidewalk, separated from the Mission by the first set of barricades, as Friend-1 began to put the chain through the Mission's door handles. Before Friend-1 could finish putting the chain through the handles, a Mission security agent wearing a black shirt and tie ("Agent-1") suddenly burst through the Mission's doors, pushing them into Friend-1. Friend-1 immediately ran toward Second Avenue, dropping the chain on the sidewalk. Agent-1 and another Mission security agent, who was wearing a grey suit ("Agent-2"), began to run after Friend-1, but were unable to catch him.



21. The agents then trained their anger on Yasin and A.E., who were still standing on the public sidewalk, separated from the Mission by two barricades. Agent-1, who had picked up the chain that Friend-1 dropped, ran to the end of the barricades closest to the Mission, moved them aside to circle around them, and approached A.E. Agent-1 motioned toward A.E. as if he would hit A.E., but then moved directly toward Yasin, who was filming with a phone.

6



22.     Without provocation from Yasin or A.E., Agent-1 whipped Yasin on the elbow with the chain, injuring Yasin.

23.     Agent-2 grabbed A.E. by the shirt and forcibly pulled A.E. into a recessed doorway a few yards from the Mission's entrance.  In so doing, Agent-2 took A.E. from a public sidewalk to an area that was closed to pedestrians due to the presence of the barricades.  Agent-2 held A.E. in the doorway and said he was detaining A.E., without offering any explanation as to why.  A.E. felt panic as Agent-2 grabbed and held him in the doorway.

24.     Yasin went toward A.E.  Standing next to Agent-2, Agent-1 still held the chain in his left hand.  Yasin pleaded with the agents to let A.E. go, but Agent-2 continued to hold A.E. while Agent-1 blocked Yasin from reaching his brother.  Friend-1, who had returned to the area, told the Egyptian agents, "[i]t wasn't him, it was me."

25.     Agent-1 pushed Yasin away from his younger brother.  A.E. attempted to free himself from Agent-2, but could not overcome Agent-2's grip.  While he was forcibly being detained in the doorway, A.E.'s hand and elbow were scraped against the brick wall and began to

7

bleed. As Agent-2 restrained A.E. with one hand, he appeared to use his other hand to call or text someone on his phone.

  

26. Friend-1, meanwhile, called 911, stating, a "kid is being attacked," and imploring the New York City Police Department (the "NYPD") "to bring somebody" because it was "getting really intense."

27. Yasin, his voice raspy from fear and extreme stress, yelled at the agents again to let A.E. go, while A.E. tried unsuccessfully to free himself from Agent-2's grip. Yasin tried to reach A.E., but Agent-1 continued to push him away.

28. Moments later, a third and fourth agent of the Mission ("Agent-3" and "Agent-4," and collectively with Agent-1 and Agent-2, the "Agents") emerged from the Mission. The Agents grabbed Yasin and A.E. and forcibly dragged them inside the Mission against their will. (Exhibit A).[7]

---

[7] Plaintiffs will be requesting that the Court accept this video exhibit for filing.

29. Once inside the Mission, the Agents' violence grew more vicious and brazen.

30. In the Mission's entrance, Agent-1 took the chain with both hands, wound it back over his head, and struck Yasin on the neck. Seconds later, Agent-1 wound the chain back again and whipped Yasin on the leg.

 

31. The Agents then dragged Yasin up approximately five steps further inside the Mission. Meanwhile, Agent-2, who was forcibly holding A.E., dragged A.E. further inside the Mission. Agent-4 exited the Mission and closed the door.

32. Yasin laid defenseless on the floor, having already been whipped with the chain several times by Agent-1. Agent-1, still brandishing the chain, stood over Yasin. Agent-3 grabbed the ends of a scarf[8] Yasin wore around his neck, and pulled back, choking Yasin. Yasin

---

[8] The type of scarf Yasin had is referred to as a "keffiyeh" and sometimes worn to demonstrate support for the Palestinian community.

9

could not breathe and feared he would suffocate and die.  A.E. tried to intervene to stop Agent-3 from choking Yasin, but another agent pulled A.E. away from his brother.





10

33.     Seconds later, officers from the NYPD arrived.  As they entered the Mission, one of the officers pointed a taser at Yasin, who was still struggling to breathe, having been choked.  Yasin put his hands in the air to signal he was not fighting.  Agent-1 held A.E. in a headlock, immobilizing A.E.



***The Arrest of Yasin and A.E. Based on Egypt's False Statements to the NYPD***

34.     After the officers entered, they separated Yasin and A.E. and took them further inside the Mission, where the brothers were cuffed and arrested—even though *they* had been brutally assaulted by the Agents.

35.     The police put Yasin and A.E. in separate vehicles and took them to the local precinct.  A.E. spent the night in the precinct and, when police attempted to transfer him to a different facility by car, a substantial time sitting in the car.  This was A.E.'s first night away

11

from home without family or friends. The following day, on August 21, A.E. was charged with various offenses based on false reports from Egyptian officials or employees that *A.E.* had acted against Mission employees.

36. Yasin also spent the night of August 20 in jail. The next day, he was arraigned on charges of third-degree assault and second-degree aggravated harassment. These claims were based on an agent's perverse and blatantly false claim that *Yasin* had hit *him* with a chain.

***Yasin's and A.E.'s Physical and Emotional Injuries***

37. A.E.'s hand and elbow were injured during the Agents' attack and continued to cause him pain afterward. A cut on his elbow developed a MRSA infection, a serious and in some cases life-threatening condition, requiring medical attention.

38. Following the attack, Yasin continued to have difficulty breathing, was coughing, had difficulty swallowing, and felt as if his throat was closing. Yasin's elbow was painful, bruised, and swollen from the attack. On the evening of the attack, while he was in NYPD custody, he was taken to Bellevue Hospital for testing due to these symptoms. The doctor who examined Yasin noted that Yasin presented with trauma to his neck tissue and pain in his neck and left elbow, as well as lightheadedness, high blood pressure, a headache, and nausea. The doctor gave Yasin a CT scan and X-rays. Yasin sought additional treatment at an emergency room two days later.

39. Yasin continued to suffer from these symptoms in the period after the attack. Further exacerbating this distress, Egypt revoked Yasin's citizenship.

40. Because of Egypt's attack on Yasin and A.E., they have each suffered lasting physical and emotional harm, negatively impacting their education and daily lives. Yasin continues to experience pain and a limited range of motion in his elbow and wrist, which have

interfered with his routine physical activities, including physical exercise. The attack interfered with Yasin's ability to focus on his nursing school applications, which he was completing at the time of the attack. It also has interfered with his appetite, sleep, and ability simply to walk down the street without fear of being threatened by a supporter of Egypt. The attack has caused Yasin to feel upset, anxious, angry, and betrayed by the country his family is from.

## CLAIMS FOR RELIEF

### Count I
### Assault

41. Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

42. At all times relevant herein, Defendant Egypt acted through its officials or employees, who were acting within the scope of their office or employment.

43. Defendant's officials or employees acted intentionally to cause harmful and offensive contact to Plaintiffs Yasin El Sammak and A.E.

44. Defendant's officials or employees also acted intentionally to put Plaintiffs Yasin El Sammak and A.E. in imminent apprehension of such harmful contact.

45. Plaintiffs Yasin El Sammak and A.E. suffered physical, mental, and emotional damages as a result of the intentional acts of Defendant, through its officials or employees.

46. Plaintiffs' injuries and damages were caused by the reckless and intentional acts of Defendants' officials or employees.

### Count II
### Battery

47. Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

48. At all times relevant herein, Defendant Egypt acted through its officials or employees, who were acting within the scope of their office or employment.

49. Defendant's officials or employees intentionally and knowingly committed wrongful acts which resulted in harmful and offensive bodily contact with Plaintiffs.

50. Such contact included repeatedly striking Plaintiff Yasin El Sammak's body with a chain, grabbing Plaintiffs' persons, shoving A.E. into a brick wall, which left him with abrasions on his hand and elbow, forcing Plaintiffs to the ground, restraining Plaintiffs, and choking Plaintiff Yasin El Sammak by the throat.

51. Plaintiffs did not consent to the contact.

52. Defendant's officials or employees acted with the intent to cause injury and did actually cause injury, damage, loss, and harm to Plaintiffs.

## Count III
## False Imprisonment

53. Plaintiffs reallege and incorporate by reference all previous paragraphs as if fully set forth herein.

54. At all times relevant herein, Defendant Egypt acted through its officials or employees, who were acting within the scope of their office or employment.

55. Defendant's officials or employees unlawfully confined A.E. within boundaries fixed by them. Such detention and/or false imprisonment was illegal and unjust and was done without the consent of A.E., who was conscious of his confinement.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Award to Plaintiffs compensation for all injuries;

b. Award to Plaintiffs punitive damages;

  c. Award to Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

  d. Grant such further relief as the Court may deem just and proper.

Dated:  February 5, 2026     Respectfully submitted,

              */s/ Rushmi Bhaskaran*
              Rushmi Bhaskaran
              Sasha Dudding
              BALLARD SPAHR LLP
              1675 Broadway, 19th Floor
              New York, NY 10019
              Tel: (212) 223-0200
              Fax: (212) 223-1942
              bhaskaranr@ballardspahr.com
              duddings@ballardspahr.com

              Wilson Smerconish
              BALLARD SPAHR LLP
              1735 Market Street, 51st Floor
              Philadelphia, PA 19103
              Tel: (215) 665-8500
              Fax: (215) 864-8999
              smerconishw@ballardspahr.com

              Joshua Colangelo-Bryan
              HUMAN RIGHTS FIRST
              121 West 36th Street, PMB 520
              New York, NY 10018
              Tel: (212) 845-5243
              colangeloj@humanrightsfirst.org

              *Counsel for Plaintiffs*